UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

GWEN B. DALUGE, MURRAY YOUNG, AND
HELENE K. BIRNBAUM, Individually and on
Behalf of All Others Similarly Situated,

    Plaintiffs,

v.

CONTINENTAL CASUALTY COMPANY,

    Defendant.

Civil Action No. 3:15-cv-00297-SLC

**DEFENDANT CONTINENTAL CASUALTY COMPANY'S
MOTION FOR LEAVE TO SUPPLEMENT THE RECORD ON
PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Defendant Continental Casualty Company ("CCC") respectfully requests leave to supplement the record on plaintiffs' pending class certification motion with material that has become available since briefing was concluded on that motion.

First, CCC requests leave to supplement the record with the September 6, 2017 hearing transcript, the September 13, 2017 court order regarding class certification, and the September 8, 2017 Joint Status Report in *Levine, et al. v. Continental Casualty Company*, No. 1:14-cv-11099-MLW-MBB (D. Mass.) ("*Levine*").[1] *See* Part I below. In that case, which bears strong similarity to the case at hand, a Massachusetts federal court stated that it would deny class certification, whereupon plaintiffs, represented by the same counsel as the plaintiffs in this case, immediately withdrew their pending motion for class certification with prejudice.

---

[1] The September 6, 2017 Motion Hearing transcript ("*Levine* Tr."), the September 13, 2017 Memorandum and Order ("*Levine* Order"), and the Joint Status Report ("*Levine* Status Report") are attached hereto as Exhibits 1-3, respectively.

Second, CCC requests leave to bring to the Court's attention the United States Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017). *See* Part II below. That case makes clear that this Court lacks jurisdiction over the claims of policyholders in plaintiffs' proposed 11-state class whose alleged injury has no connection to Wisconsin.

Finally, CCC requests leave to submit additional evidence regarding plaintiff Helene K. Birnbaum. *See* Part III below. Ms. Birnbaum's factual situation has changed and she is now receiving benefits for her facility pursuant to her long-term care insurance policy. The changing nature of her claim highlights some of the individual issues precluding class certification in this case (just as it did in *Levine*).

## ARGUMENT

### I. CONSIDERING SIMILAR CLAIMS AGAINST CCC, THE *LEVINE* COURT DETERMINED THAT CLASS CERTIFICATION WAS INAPPROPRIATE.

Similar to the *Daluge* plaintiffs, in *Levine* plaintiffs alleged that they were entitled to coverage for their stays in assisted living facilities under long-term care policies issued by CCC. At oral argument on plaintiffs' class certification motion, the *Levine* court advised that it would deny certification of plaintiffs' requested damages class pursuant to Federal Rule of Civil Procedure Rule 23(b)(3). *See Levine* Tr. p. 88 ("I'm going to tell you though . . . it's my present intention to deny the motion for class certification with regard to the Rule 23(b)(3) damage class."). The court acknowledged all of the individual issues with regard to damages, *see id*. p. 41, and questioned whether a class action was a superior mechanism, stating as follows:

> I would question whether this class action is a superior way for two families with claims of hundreds of thousands of dollars each to get a quick resolution that's going to make them whole if they can prove that in the unique circumstances of their own case there was a breach of contract.

*Id.* pp. 82-83.

The Rule 23(b)(2) declaratory or injunctive relief class in *Levine* fared no better because the plaintiffs sought primarily monetary relief. *See Levine* Tr. p. 88 ("It's my present intention to deny the motion to certify the Rule 23(b)(2) putative injunction class . . . . I think the case right now is predominantly for money relief."). In addition, because both of the named plaintiffs in *Levine* are deceased, the court recognized that there was not an adequate plaintiff to represent the class. *See id.* The *Levine* court left open whether it would be more appropriate to deny the Rule 23(b)(2) class without prejudice and permit CCC to argue futility should plaintiffs seek to substitute another named plaintiff to represent the injunctive class. *See id.*

After the *Levine* oral argument, the plaintiffs sought to abandon their class certification motion with prejudice and proceed individually. *See* Pls.' Stmt., *Levine* Joint Status Report p. 1; *Levine* Order. On September 13, 2017, the *Levine* court granted that request. *See Levine* Order. In doing so, the court reiterated its intention expressed at the hearing "to deny plaintiffs' Motion to Certify a Class . . . for claims for damages pursuant to Federal Rule of Civil Procedure 23(b)(3), primarily because individual issues of fact predominate and a class action for damages would not be a superior means of fairly and efficiently adjudicating the controversy." *Id.* p. 1. The court further reinforced that it had "expressed its intention to deny the Motion to certify a class for injunctive relief pursuant to Rule 23(b)(2), but left open the question of whether the denial would be with or without prejudice." *Id.*

The *Levine* court's view that class treatment was not appropriate—to which plaintiffs responded by withdrawing their motion altogether—is instructive as the Court considers class certification in *Daluge*. Like the plaintiffs in *Levine*, the *Daluge* plaintiffs' claims require examination of numerous individual issues, including policyholder medical condition and eligibility for coverage, care needs, services provided, and facility structure and staffing. And

3

like the plaintiffs in *Levine*, the relief the *Daluge* plaintiffs ultimately seek is monetary, which is not appropriate for an injunctive or declaratory relief class.

Finally, in *Levine* as in this case, the plaintiffs made much of a District of Connecticut decision in *Estate of Gardner v. Continental Casualty Company*, 316 F.R.D. 57 (D. Conn. 2016). The *Levine* court correctly dismissed the *Gardner* decision because it involved only one state and the issues were more straightforward. *See, e.g.*, *Levine* Tr. p. 83 ("The Gardner case involved one policy, not multiple policies, one state law, and CNA admitted that they have the practice."). Similarly, *Gardner* has no application in this case involving policies and regulatory schemes in 11 states and CCC's statistics show no uniform practice.

## II. APPLYING THE *BRISTOL-MYERS SQUIBB* DECISION, CERTIFICATION OF AN 11-STATE CLASS WOULD VIOLATE CCC'S DUE PROCESS RIGHTS.

In light of the United States Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, No. 16-466 (June 19, 2017), plaintiffs' attempt to certify an 11-state class in this case must be rejected. It is impermissible under the due process clause to proceed with claims purportedly belonging to absent policyholders whose alleged injury has absolutely no connection to Wisconsin.

In this diversity case, the constitutional limits of the Court's personal jurisdiction derive from the Fourteenth Amendment's due process clause, which "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'"[2] *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 464 (1985), and

---

[2] A federal court has personal jurisdiction if a court of the state in which that court sits would have jurisdiction over the lawsuit. *Kuhn Knight, Inc. v. VMC Enterprises, Inc.*, 464 F. Supp. 2d 806, 811 (W.D. Wis. 2006) (citing *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 664 (7th Cir. 1986)). The Wisconsin long-arm statute has been interpreted to confer jurisdiction "to the fullest extent allowed under the due process clause." *Felland v. Clifton*, 682 F.3d 665, 678 (7th Cir. 2012) (internal quotation omitted).

*Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement,* 326 U.S. 310, 319 (1945)). It is clear, particularly in light of the Supreme Court's recent decision in *BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549 (2017), that a court sitting in Wisconsin would not have general jurisdiction over CCC. While it may have sold and issued policies to Wisconsin policyholders sufficient to subject it to personal jurisdiction on claims related to those policies, CCC's "in-state business . . . does not suffice to permit the assertion of general jurisdiction over claims . . . that are unrelated to any activity occurring in" Wisconsin.[3] *See id.* at 1553, 1559 ("The defendant railroad . . . although 'doing business' in Montana when the litigation commenced, was not incorporated in Montana, nor did it maintain its principal place of business in that State.").

*Bristol-Myers* clarifies that this Court also cannot exercise specific jurisdiction over any non-Wisconsin claims. *Bristol-Myers* involved claims by more than 600 plaintiffs, most of whom were not California residents, who filed an action in California state court asserting state-law claims arising out of injuries allegedly caused by a Bristol-Myers Squibb Company ("BMS") drug. *Bristol-Myers Squibb*, 137 S. Ct. at 1778. BMS asserted lack of personal jurisdiction over the nonresidents' claims. The majority of the California Supreme Court held that, because the claims of the nonresidents were "based on the same allegedly defective product and the assertedly misleading marketing and promotion of that product," a sufficient connection was met to find specific jurisdiction. *Id.* at 1779.

The U.S. Supreme Court reversed the California Supreme Court's decision, holding that the exercise of personal jurisdiction over BMS violates the Due Process Clause of the Fourteenth Amendment. *Id.* at 1782. It reasoned as follows:

> The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents'

---

[3] CCC is an Illinois corporation with its principal place of business in Illinois.

5

> claims. As we have explained, "a defendant's relationship with a . . . third party, standing along, is an insufficient basis for jurisdiction." *Walden*, 571 U.S., at __ (slip op., at 8). This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents. . . . What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.

*Id.* at 1781.

Just as in *Bristol-Myers*, in this case, all of the conduct giving rise to the claims of non-Wisconsin policyholders occurred outside of Wisconsin, and all of the harm the non-Wisconsin policyholders allegedly suffered occurred outside of Wisconsin. There simply is no connection between Wisconsin and CCC that could confer specific jurisdiction as to the claims of policyholders in other states. The 11-state class that plaintiffs seek cannot be certified. *See Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017) ("The Court also notes that it lacks personal jurisdiction over the claims of putative class members with no connection to Arizona and therefore would not be able to certify a nationwide class." (citing *Bristol-Myers*)); *see also In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696 (BMC) (GRB), 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) (applying *Bristol-Myers* and holding "[t]he constitutional requirements of due process does [*sic*] not wax and wane when the complaint is individual or on behalf of a class").

### III. PLAINTIFF HELENE BIRNBAUM IS NOW RECEIVING BENEFITS FOR HER FACILITY.

Plaintiff Helene K. Birnbaum is one of three named plaintiffs in this putative class action. Ms. Birnbaum brought this action for coverage under her long term care insurance policy for her stay at the NewBridge on the Charles ("NewBridge") assisted living facility in Dedham, Massachusetts. *See* Def. Continental Casualty Company's Corrected Response to Pls.' Mot. for Class Cert. (Doc. No. 59) ("CCC's Class Cert. Resp.") p. 22. When Ms. Birnbaum entered

NewBridge in March 2015, she moved into the traditional assisted living section of that facility, not the memory care section. *Id.*

After the pending class certification and summary judgment motions in this case were briefed, Ms. Birnbaum moved to the Gilda and Alfred A. Slifka Memory Care Assisted Living Residences at NewBridge to obtain care for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Ex. 4. CCC has since extended coverage for Ms. Birnbaum's stay at NewBridge under the Alternate Plan of Care Benefit in her policy for expenses incurred up to the daily facility benefit in her policy. *See* Ex. 5. The change in Ms. Birnbaum's circumstances illustrates the individualized nature of long term care coverage disputes. Such claims are simply not amenable to class treatment. *See* CCC's Class Cert. Resp. pp. 36-37.

Ms. Birnbaum has been extended coverage for the entire duration of her stay at NewBridge, including her time in the traditional assisted living section. To the extent that she has received benefits at the daily benefit amount specified in her policy, she would have no further claim to entitlement to past damages. Nor would she have standing to seek injunctive or declaratory relief, as she cannot show a risk of future injury. *See id.* pp. 36-38 (immediate threat of future injury required for injunctive or declaratory relief). At a minimum, she is not a typical representative of the class. *See* Fed. R. Civ. P. 23(a)(3).

## CONCLUSION

For the foregoing reasons, CCC respectfully requests leave to supplement the class certification record with: (1) the September 6 transcript, September 8 joint statement, and September 13 order addressing class certification issues in *Levine*; (2) the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*,

137 S. Ct. 1773 (2017), and authority applying that decision, and (3) evidence regarding Ms. Birnbaum's covered stay at NewBridge on the Charles.

Dated: October 25, 2017

DEFENDANT
CONTINENTAL CASUALTY COMPANY

  /s/ Brent R. Austin
Brent R. Austin
R. John Street
Ameri R. Klafeta
EIMER STAHL LLP
224 S. Michigan Avenue, Suite 1100
Chicago, IL 60604
Tel: (312) 660-7600
Fax: (312) 692-1718
baustin@eimerstahl.com
jstreet@eimerstahl.com
aklafeta@eimerstahl.com

*Attorneys for Defendant
Continental Casualty Company*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 25, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this document through the court's CM/ECF System.

                        /s/ Brent R. Austin

                        BRENT R. AUSTIN