# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| GWEN B. DALUGE, MURRAY YOUNG, AND HELENE K. BIRNBAUM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>CONTINENTAL CASUALTY COMPANY,<br><br>Defendant. | Civil Action No. 3:15-cv-00297-WMC |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................... 1

II.     BACKGROUND ........................................................................................... 2

        A.      The Litigation.................................................................................... 2

        B.      Plaintiffs' Claims and Defendant's Defenses ....................................... 4

        C.      The Proposed Settlement .................................................................... 5

III.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED ................. 7

        A.      The Settlement of a Class Action Is Favored........................................ 8

        B.      The Balance of Factors Weigh in Favor of Granting Preliminary Approval.......... 9

                1.      The Strength of the Plaintiffs' Case Versus the Value of the Settlement. 10

                2.       The Expense, Complexity, and Likely Duration of Further Litigation.... 11

                3.       The Views of Experienced Counsel....................................................... 11

                4.      The Proposed Settlement is the Product of Arms-Length Negotiations... 12

                5.      The Advanced Stage of These Proceedings................................................ 13

IV.     THE CLASSES SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES .......... 13

V.      THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE PROOF OF
        CLAIM AND RELEASE FORM ARE APPROPRIATE ............................................... 18

        A.      The Scope of the Notice Program Is Adequate...................................... 18

        B.      The Content of the Proposed Notices Comports With the Requirements of Due
                Process and Rule 23 ......................................................................... 19

VI.     PROPOSED SCHEDULE ............................................................................... 20

VII.    CONCLUSION.............................................................................................. 21

i

## TABLE OF AUTHORITIES

<u>Cases</u>

*Allen v. Isaac*,
99 F.R.D. 45 (N.D. Ill.) ................................................................................................... 14

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) .............................................................................................. 13, 14

*Armstrong v. Bd. of Sch. Dirs of the City of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) ............................................................................... 11, 12

*Chambery v. Tuxedo Junction Inc.*,
10 F. Supp. 3d 415 (W.D.N.Y.2014) ............................................................................ 14

*Estate of Gardner v. Cont'l Cas. Co.*,
No. 3:13-CV-01918-JBA, 2016 WL 10489851 (D. Conn. Nov. 3, 2016) .............................. 19

*Estate of Gardner v. Cont'l Cas. Co.*,
316 F.R.D. 57 (D. Conn. 2016) ............................................................................ 14, 15, 17

*Hainey v. Parrott*,
617 F. Supp. 2d 668 (S.D. Ohio 2007) ......................................................................... 12

*In re AT & T Mobility*,
789 F. Supp. 2d 935 (N.D. Ill. 2011) ........................................................................... 11

*In re Gen. Motors Corp. Engine Interchange Litig.*,
594 F.2d 1106 (7th Cir. 1979) ...................................................................................... 8

*In re: Subway Footlong Sandwich Mktg. & Sales Practices Litig.*,
No. 3:13–md–2439, 2015 WL 12616163 (E.D. Wis. Oct. 2, 2015) .................................. 12

*Isby v. Bayh*,
75 F. 3d 1191 (7th Cir. 1996) .................................................................................. 8, 9

*Kessler v. Am. Resorts International's Holiday Network, Ltd.*,
No. 1:05-cv-05944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ..................................... 9

*Mangone v. First USA Bank*,
206 F.R.D. 222 (S.D. Ill. 2001) ................................................................................... 18

*Pavlov v. Cont'l Cas. Co.*,
No. 5:07CV2580, 2009 WL 10689011 (N.D. Ohio Oct. 7, 2009) ...................................... 20

*Phillips v. Petroleum Co. v. Shutts,*
    472 U.S. 797 (1985) ................................................................................. 18

*Reynolds v. Beneficial Nat. Bank,*
    288 F.3d 277 (7th Cir. 2002) ................................................................. 8, 9

*Schulte v. Fifth Third Bank,*
    805 F. Supp. 2d 560 (N.D. Ill. 2011) .......................................... 10, 11, 13

*Smith v. SIMM Assocs., Inc.,*
    No. 17-C-769, 2018 WL 389089 (E.D. Wis. Jan. 12, 2018) ................... 17

*Sutton v. Bernard,*
    No. 1:00-cv-06676, 2002 WL 1794048 (N.D. Ill. Aug. 5, 2002) .............. 9

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.,*
    463 F.3d 646 (7th Cir. 2006) ........................................................ *passim*

<u>Statutes</u>

28 U.S.C. § 1715 ....................................................................................... 19

<u>Rules</u>

Fed. R. Civ. P. 23 ............................................................................... *passim*

<u>Other Authorities</u>

*Manual for Complex Litigation*, Fourth, (2004) ..................................... 8, 18

*Manual for Complex Litigation*, Third, (1995) ........................................... 14

*Newberg on Class Actions*, Fourth, (2002) ........................................... 8, 18

Plaintiffs Gwen B. Daluge ("Plaintiff Daluge"), Murray Young ("Plaintiff Young"), and Helene K. Birnbaum ("Plaintiff Birnbaum") (collectively, "Plaintiffs" or "Class Representatives"), individually and on behalf of the proposed Classes, respectfully submit this memorandum of law in support of its unopposed motion for preliminary approval of the settlement (the "Settlement") reached with Continental Casualty Company ("CNA" or "Defendant") in the above-captioned litigation (the "Action"), pursuant to Fed. R. Civ. P. 23, and for entry of the Parties' proposed Order of Preliminary Approval of Settlement, attached hereto as Exhibit A.[1]

## I.    INTRODUCTION

This proposed Settlement provides past damages of up to 60% of the Policy's LTCF Daily Benefit, subject to a $4.85 million class-wide cap on benefit payments/expenses/attorneys' fees/contribution awards, to class members who experienced a claim denial for a stay at a Qualified Facility in one of the Class States[2] and who received Qualified Care ("Class I"). In addition, and perhaps most significantly, going forward Assisted Living Facilities in the Class States that comply with revised claim handling standards will be covered at 100% of the Long Term Care Facility Benefit (subject to all other eligibility requirements of the policy not impacted by this litigation) ("Class II"). The specific terms of the Settlement are set forth in the Settlement Agreement.

By this motion, Plaintiffs seek entry of an order:

---

[1] All capitalized terms used herein that are not otherwise defined shall have the meanings ascribed to them in the agreement entered into by all parties (the "Settlement Agreement" or "Agreement"), dated February 28, 2018, which is submitted herewith as Exhibit B.

[2] The eleven "Class States" are: Arizona, Florida, Georgia, Indiana, Iowa, Kentucky, Massachusetts, Minnesota, New York, Tennessee and Wisconsin.

- granting preliminary approval of the proposed Settlement on the terms set forth in the Agreement;

- finding that the proposed Classes meet all of the requirements of Rules 23(a), 23(b)(2) and 23(b)(3) and certifying the Classes for settlement purposes;

- approving the Parties' proposed form and manner of giving notice of the proposed Settlement to the Classes; and

- setting a hearing date for final approval thereof (the "Final Fairness Hearing") and a schedule for various deadlines relevant thereto.

It must be noted that, although CNA makes no objection to this motion, and has agreed to the terms of the settlement, CNA reserves all of its objections to certification of a litigation class. As shown below, the proposed Settlement is an excellent result for the Classes, is fair, reasonable, and adequate under the governing standards in this Circuit, and warrants approval by this Court.

## II.    BACKGROUND

### A.    The Litigation

This litigation was initiated on May 18, 2015, when Plaintiff Daluge filed her initial class action complaint in this Court. *See* ECF No. 1.  Shortly thereafter Plaintiff Young filed a class action complaint in the United States District Court for the Southern District of Florida against CNA (the "Young Complaint").  *See* S.D. Fla. No. 9:15-cv-80673, ECF No. 1.  On or about August 7, 2015, Plaintiff Daluge amended her complaint to add Plaintiff Young and Plaintiff Birnbaum as plaintiffs, and to expand the scope of relief sought. *See* ECF No. 5. Shortly thereafter, the Young Complaint was voluntarily dismissed in the United States District Court for the Southern District of Florida. *See* S.D. Fla. No. 9:15-cv-80673, ECF No. 16.

Plaintiffs filed the Second Amended Class Action Complaint (the "Current Complaint") on May 23, 2016.  *See* ECF No. 47. CNA filed an answer to the Current Complaint on June 6, 2016. *See* ECF No. 51. Prior to filing the Current Complaint, Plaintiffs filed their motion for

class certification on May 20, 2016.  *See* ECF No. 38. The motion for class certification was fully briefed as of July 5, 2016.  *See* ECF Nos. 59 & 64.

On November 21, 2016, CNA moved for summary judgment separately with respect to the claims of each Plaintiff.  *See* ECF Nos. 80, 89, & 96. Plaintiffs filed their memorandum in opposition to the motions for summary judgment on December 24, 2016. *See* ECF No. 108. CNA filed three separate replies for each Plaintiff on January 13, 2017. *See* ECF Nos. 127, 129, & 136. The motion for class certification and the motions for summary judgment are currently under submission.

On April 21, 2017, this Court struck the remainder of the schedule in this Action pending a Court ruling on the class certification and summary judgment motions. *See* ECF No. 154. On October 25, 2017, CNA filed a motion to supplement its response to Plaintiffs' motion for class certification.  *See* ECF No. 155. Plaintiffs filed an opposition to CNA's motion to supplement its response to Plaintiffs' motion for class certification on December 13, 2017 (*see* ECF No. 163) and CNA filed a motion for leave to file a reply on December 21, 2017. *See* ECF No. 165.

The Parties agreed to a formal mediation process overseen by Michael D. Young, Esq. of JAMS.  Prior to the first mediation session, the Parties exchanged detailed mediation statements, which addressed the issues of class certification, liability and damages. On November 7, 2017, the Parties engaged in a full-day mediation session at JAMS in New York City. The session ended without an agreement being reached.

Over the course of the next several months, Michael Young conducted further discussions telephonically with Plaintiffs and CNA, which culminated in an agreement in principle to settle the Action.  Thereafter, the Parties formalized the material terms of a settlement of this Action and proceeded to draft the Agreement and its exhibits.

**B.      Plaintiffs' Claims and Defendant's Defenses**

The claims in this Action involve numerous complex legal and factual issues, and include allegations of breach of contract, bad faith and unfair trade practices.  Plaintiffs generally allege that they submitted claims for coverage under their policies' Long -Term Care Facility Benefit -- which pays a fixed daily indemnity amount for stays at long term care facilities that meet specified policy requirements -- but that their claims were wrongfully denied in a common systematic fashion aimed at excluding Assisted Living Facilities in certain states from coverage. Defendant denies Plaintiffs' claims and allegations, denies that it engaged in any wrongdoing, denies that it committed any violation of law, and denies that it acted improperly in any way. Defendant further maintains that it has meritorious defenses, that in any event the case is not appropriate for class treatment, that all challenged claim denials were proper, and that the facilities at issue are not covered by the policies' Long Term Care Facility Benefit.

In essence, the Parties fundamentally disagree on the meaning of the language in the policies as well as the interpretation of the applicable statutes and regulations governing both long term care insurance and Assisted Living Facilities in the Class States.  More specifically, Plaintiffs and Defendant disagree: (1) whether the Defendant violated the policies' terms or otherwise engaged in breach of contract in the Class States; (2) whether Defendant processed claims in bad faith; (3) whether the facilities at issue hold a license permitting them to perform services required by the policies' facility definition; (4) whether the facilities at issue provide nursing services; (5) whether the facilities at issue are required to keep daily medical records; (6) whether assistance with activities of daily living is custodial nursing care under the policies; (7) whether Assisted Living Facilities can have 24-hour-a-day nursing and/or continuous nursing; and (8) whether Plaintiffs and the Class I Members are entitled to damages.

### C.     The Proposed Settlement

The Parties have agreed in principle to the following parameters of settlement:

(1)  <u>Prospective Relief for Class II</u>

If the Settlement is approved, Defendant will begin providing coverage for qualified stays at Assisted Living Facilities under the LTCF benefit in the Class States effective July 1, 2017 as long as the following criteria (and any other applicable provisions of the Settlement Agreement) are satisfied:

- The policyholder must reside in the facility and receive care from personnel of that facility as set forth below. Facility personnel must be employed by, contracted with, or work for the facility. Home health care providers or outside third-party care providers not contracted with the facility, or care provided by friends or family members of any degree or kind, shall not qualify. The facility personnel must be present 24-hours-a-day, and be able to provide the care described below.

- The facility must be registered with, licensed or certified by the state and is legally able to provide at least the care set forth below.

- An RN, LPN or LVN must be on-site at least 5 hours a day, 7 days a week, and on call the remainder of the time. The facility must confirm in writing that an RN, LPN or LVN is responsible for the implementation or delegation of responsibility for providing at minimum the care set forth below to its residents on a twenty-four (24) hour basis.  The facility must further confirm in writing that sufficient numbers of facility personnel are available to provide at minimum the care set forth below to its residents on a twenty-four (24) hour basis and to meet the needs of residents at all times based on the residents' service programs.

- The policyholder must receive assistance from facility personnel, with any of the following:

  a.  skilled nursing or intermediate nursing care – which is medical care above the level of assistance with activities of daily living – at least three (3) times a week; or

  b.  two or more of the following activities of daily living, with the frequency as indicated:  bathing (at least three (3) times a week), dressing (at least five (5) times a week), transferring (at least once a day), eating (at least once a day), incontinence care (at least once a day), medication (at least

three (3) times a week), mobility (at least once a day), and toileting (at least once a day); or

c. confinement in a locked or lockable memory care or dementia unit serving patients who are elopement risks with regular assistance with at least one of the activities of daily living identified above.

- Every six months, a physician associated with the facility or the Class II member's personal physician must certify that their care needs, as described above, are being met by the facility. The facility must also verify in writing that it maintains a record or records documenting the daily care and/or treatment provided to the policyholder.

If these five criteria are met and continue to be met, the policyholder will qualify for the Long Term Care Facility Benefit and the Waiver of Premium Benefit, at *100%* of their policies benefit level. *See* Exhibit B at section IV. B. This is an extraordinary result for the Class II members given that, prior to this litigation according to Plaintiffs' allegations, CNA was denying all claims for stays at Assisted Living Facilities in the Class States under the Long-Term Care Facility Benefit.[3]

(2)  Class I Settlement Benefit and the $4.85 Million Cap

In addition to the prospective relief for Class II, the Settlement will provide eligible Policyholders an opportunity to file a claim for benefits for past claim denials against a $4.85 million cap.[4]  The terms of the Class I Settlement Benefits are set forth in detail in the Settlement Agreement, but are briefly summarized as follows:

The Class I Settlement Benefit provides for benefits of up to 60% of Class Members' Long Term Care Facility Benefit policy amounts for those Class Members who had their claims denied for a stay at a Qualified Facility in one of the Class States and who received either: (1)

---

[3]     CNA denies these allegations.

[4]     The Class I Settlement Benefit will also be capped at any maximums or applicable benefit periods provided in the Policyholder's Policy, and will be offset by any other payments made to the Policyholder under his or her Policy for the same time period claimed, such as, by way of example, for home health care.

skilled or intermediate nursing care – which is medical care above the level of assistance with the activities of daily living – at least 3 times a week; (2) specified assistance with one activity of daily living as defined in the Settlement Agreement; or (3) confinement in a locked or lockable memory care or dementia unit serving patients who are elopement risks with regular assistance.

The $4.85 million Payment Cap applies to:

    a.  Settlement payments to Class I members who submit valid claims;

    b.  Settlement administration and notice costs, but not to exceed $75,000 (CNA will cover any overage);

    c.  Attorneys' fees and expense reimbursements, as approved by the Court; and

    d.  Any contribution awards to the named plaintiffs, as approved by the Court.

The Parties believe they have identified most of the policyholders potentially eligible for the Class I Settlement benefits. Because of Class Counsel's and Defense Counsel's experience with similar long term care insurance class action settlements in the past and the expected valid claim response rate, $4.85 million should be sufficient to pay all validly filed claims at 60% in addition to covering the administration/notice expenses, attorneys' fees/expenses, and class representative contribution awards. If, however, the $4.85 million cap is exhausted through a higher than expected valid claim response rate, then valid claims will be reduced proportionately to percentages below 60%.[5]

## III.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS WARRANTED

When viewed in light of the substantial risks facing Plaintiffs if the litigation continues – including the risk that the Court could deny Plaintiffs' motion for class certification, or grant Defendant's motion for summary judgment -- the Settlement represents a very good result for the

---

[5]    Settlement Agreement, Section IV.A.3.c, p. 26.

Classes. The Settlement also saves the Classes the considerable expense and delay posed by continued litigation which is significant given the advanced age and health circumstances of the members of the Classes.  Accordingly, the Court should grant preliminary approval.

### A.      The Settlement of a Class Action Is Favored

The law favors settlement, particularly in class actions where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.  *See Isby v. Bayh*, 75 F. 3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also Newberg on Class Actions*, Fourth, § 11.41 (2002) ("*Newberg*") ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). However, Rule 23 "requires court approval of any settlement that effects the dismissal of a class action." *Reynolds v. Beneficial Nat. Bank,* 288 F.3d 277, 279 (7th Cir. 2002).

The review of a proposed class action settlement involves a well-established three-step process. *First*, the district court issues a preliminary approval  order if the proposed settlement is "within the range of possible approval." *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 (7th Cir. 1979). *Second*, notice of the proposed settlement is given to all class members. *Manual for Complex Litigation*, Fourth, § 21.633 (2004) ("*Manual*"). *Third*, the district court issues a "final approval" order after notifying the class of the settlement and considering the substantive fairness of the settlement. *Id.* at § 21.634. This procedure serves the dual function of safeguarding class members' procedural due process rights and enabling the Court to fulfill its oversight role on behalf of the class members' interests. *See Newberg*, § 11.25.  A court should only approve a proposed settlement if it finds that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 652 (7th Cir. 2006).

A proposed settlement falls within the range of possible approval under Rule 23(e) when it will likely meet the standards applied for final approval. *See, e.g., Kessler v. Am. Resorts International's Holiday Network, Ltd.*, No. 1:05-cv-05944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (preliminary approval is a "more summary version" of the final approval inquiry). Thus, preliminary approval requires the Court to make an initial determination as to whether the settlement appears "fair, adequate, and reasonable, and not a product of collusion." *Sutton v. Bernard*, No. 1:00-cv-06676, 2002 WL 1794048, at *1 (N.D. Ill. Aug. 5, 2002) (citing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002)).

### B.    The Balance of Factors Weigh in Favor of Granting Preliminary Approval

When determining whether a settlement is fair, reasonable, and adequate, a court should consider "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Isby*, 75 F. 3d at 1199.

The proposed Settlement in this case is clearly "within the range of possible approval," as the balance of relevant factors confirms.  More specifically, preliminary approval is appropriate here based on : (a) the strength of the Plaintiffs' case compared to the amount of the settlement, which indicates that the amount obtained through negotiation falls well within a reasonable range of what Plaintiffs could anticipate obtaining were the case to be litigated through final judgment; (b) the fact that the settlement resulted out of arms-length negotiations, assisted by experienced mediator, Michael Young, Esq.; (c) the complexity, expense, and duration of further litigation, including any appeals and cross-appeals; (d) the advanced stage of litigation, which enabled

Plaintiffs to fully evaluate the merits of their case and probabilities of success were the case to be litigated through final judgment; and (e) the opinion of experienced Class Counsel that the settlement is fair, reasonable and adequate under the circumstances.

           1.      <u>The Strength of the Plaintiffs' Case Versus the Value of the Settlement.</u>

It is well-settled that "[t]he 'most important factor relevant to the fairness of a class action settlement' is . . . 'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citation omitted). To evaluate this factor, "[i]n essence, a court must weigh the value of the proposed settlement against the total amount that the class could recover, discounted by the weaknesses and risks inherent in the class' claims." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 578 (N.D. Ill. 2011).

Here, the proposed Settlement represents an excellent result for the Class Members who will have the opportunity to recover up to 60% of their benefits, if they belong to Class 1, subject to the $4.85 million cap, and have their claims paid at 100% going forward (subject to no cap other than their policies' terms), if they belong to Class 2, provided they qualify under the claims criteria agreed upon by the Parties.

While Plaintiffs believe that their claims would be borne out by the evidence, they also recognize that they face potential difficulties to proving liability.  Defendant has defenses that could be successful at class certification and/or the summary judgment stage or at trial.  Among other things, Defendant claims that Plaintiffs will be unable to prove that they acted in bad faith, or even breached the contract.  If Plaintiffs were unable to prove these or other elements of their claims, their entire case could be lost. There also would likely be appeals. In light of these risks, the Settlement is a fair, reasonable, and adequate compromise of the issues in dispute and

provides meaningful relief to the Classes who are generally comprised of elderly and infirm policyholders.

2.    <u>The Expense, Complexity, and Likely Duration of Further Litigation.</u>

The Seventh Circuit recognizes that the complexity, length, and expense of continued litigation are also relevant factors in determining whether a class action settlement is fair, reasonable, and adequate. *Synfuel*, 463 F.3d at 653. Those factors further support preliminary approval of the Settlement here. If the litigation were to continue, it could potentially continue for years, perhaps requiring multiple appeals and/or multiple trials (including a separate damages trial) in order to resolve all of Plaintiffs', and the Classes', claims. If the Court instead approves the Settlement, litigation will end and the members of the Classes "will realize both immediate and future benefits as a result." *Schulte*, 805 F. Supp. 2d at 586. *See also In re AT & T Mobility*, 789 F. Supp. 2d 935, 961 (N.D. Ill. 2011) ("A dollar recovered today is worth more than a dollar recovered in the future, which is relevant because the Settlement provides for a combination of present and future benefits."). Further, many of the members of the Classes are of advanced age and face daily health challenges. So, the real benefits provided by this Settlement now are quite important.

3.    <u>The Views of Experienced Counsel.</u>

Also weighing in favor of granting preliminary approval is the fact that counsel for Plaintiffs and Defendant – who have significant experience in class action litigation and have negotiated numerous other long term care class action settlements -- recommend approval of the Settlement. *See* Sams Decl. The Court should give weight to the opinion of experienced counsel in determining whether to preliminarily approve a settlement. *See, e.g.*, *Armstrong v. Bd. of Sch. Dirs of the City of Milwaukee*, 616 F.2d 305, 325 (7th Cir. 1980) ("the court is entitled to rely

11

heavily on the opinion of competent counsel" in weighing the fairness of a settlement). Here, Class Counsel, who has litigated numerous long-term care class actions across the country and has settled many insurance and consumer protection lawsuits, including two previous long term care insurance class actions against CNA, believe the Settlement is an excellent result particularly under the present circumstances. *See* Sams Decl. ¶¶ 3,4. That belief is based on Class Counsel's familiarity with the factual and legal issues of this litigation and the risks associated with continued litigation. *Id.*

4.    The Proposed Settlement is the Product of Arms-Length Negotiations.

A proposed settlement enjoys a presumption of fairness if the court finds that the settlement was the product of arm's length negotiations and informed bargaining with counsel experienced in similar litigation. *In re: Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, No. No. 3:13–md–2439, 2015 WL 12616163, at *3 (E.D. Wis. Oct. 2, 2015) (citing *Manual for Complex Litigation*, Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

The Settlement was reached following extensive arm's-length negotiations over an extended period of time, including a full-day mediation session and numerous follow-up discussions and negotiations over several months with mediator, Michael Young.  The arm's-length nature of the settlement negotiations, and the involvement of an experienced mediator like Michael Young, supports the conclusion that the Settlement is fair and was achieved free of collusion. *See, e.g.*, *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) ("The participation of an independent mediator in the settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties").

5.    The Advanced Stage of These Proceedings.

The advanced stage of these proceedings and extensive discovery conducted by the parties also supports preliminary approval of the settlement. *Synfuel*, 463 F.3d at 653. This factor is relevant because it determines "how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Schulte*, 805 F. Supp. 2d at 587 (citation omitted).

Here, the volume and substance of Plaintiffs' and Class Counsel's knowledge of the merits and potential weaknesses of the claims alleged are unquestionably adequate to support the Settlement. During the prosecution of this Action, Class Counsel (1) reviewed and analyzed Defendant's (a) claim handling guidelines, (b) various policy forms, (c) internal CNA email correspondence, (d) claim notes, (e) telephone call notes and recordings, and (f) email correspondence from CNA's third-party claim administrator, LTCG, Inc. ("LTCG"); (2) conducted substantial legal research regarding Plaintiffs' claims and CNA's potential defenses; (3) fully briefed a motion for class certification; (4) fully briefed oppositions to three motions for summary judgment; (5) prepared for and attended 4 depositions; (6) reviewed multiple deposition transcripts from similar matters relevant to this litigation; (7) drafted mediation statements; (8) consulted with potential experts; and (9) negotiated the Settlement with Defendant. As a result of these efforts, Class Counsel were well-informed of the strengths and weaknesses of their case when they negotiated the Settlement, and continue to believe that the Settlement is a fair resolution to the dispute. *See* Sams Decl. ¶5.

IV.   **THE CLASSES SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES**

Before granting preliminary approval of a settlement, the Court should determine whether the proposed Classes are proper classes for settlement purposes. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual*, at § 21.632. The threshold task is to determine whether the

proposed class satisfies the requirements of Rule 23(a), which are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3). In certifying a settlement class, however, the Court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; se*e also* Fed. R. Civ. P. 23(b)(3)(D).[6]

Plaintiffs have demonstrated numerosity under Rule 23 of the Federal Rules of Civil Procedure. CNA provided interrogatory responses that reflect at least 96 Assisted Living Facility claim denials in the Class States on the Class Policies (potential Class I members) and thousands of active Class Policies (Class II members). In a matter very similar to this action, which was litigated in the United States District Court of Connecticut, *Estate of Gardner v. Continental Casualty Company*, D. Conn. No. 3:13cv1918 (JBA) ("*Gardner*"), the court granted class certification based upon a class with fewer people than those involved here:

> Plaintiffs have shown that the subclass will consist of at least 29 individuals (including those who received verbal claim denials) and likely more. Further, while Plaintiffs have not put forth any evidence of financial barriers to filing individual claims, many of the class members are likely to be elderly and of limited capacity, making it difficult for them to file individual suits. Forcing the more than 29 elderly and ailing individuals in this proposed subclass "to separately pursue [their claims] ... cannot be justified practically or economically." *Allen v. Isaac*, 99 F.R.D. 45, 53 (N.D. Ill.) *amended*, 100 F.R.D. 373 (N.D. Ill.1983); *see Chambery v. Tuxedo Junction Inc*., 10 F. Supp. 3d 415, 420 (W.D.N.Y.2014) ("[C]ourts have not hesitated to certify subclasses with fewer than 40 members where joinder would be impracticable due to geographic dispersion or other factors."). Therefore, the Court finds the proposed class sufficiently numerous to satisfy Rule 23(a)(1).

*Estate of Gardner v. Cont'l Cas. Co.*, 316 F.R.D. 57, 70 (D. Conn. 2016).

---

[6]     CNA has reserved all of its objections to certifying any litigation class.

Commonality as required by Rule 23(a)(2), is also satisfied.  Plaintiffs allege that CNA had a common policy in the Class States of denying coverage at Assisted Living Facilities.  As the court in *Gardner* recognized, Plaintiffs' argument "essentially boils down to this: whatever the minor differences in circumstances among the class members, all members of both classes hold one of two identically worded insurance policies and all members of both classes have been or likely will be subjected to the same improper interpretation of that policy by Defendant, across the board, regardless of the claimant's medical eligibility or other circumstances."  *Id.* at 71.  Accordingly, "[b]ecause all of Plaintiffs' claims arise out that interpretation and do not depend on circumstances specific to individual class members, Plaintiffs' claims all 'derive from the same legal theories . . . and involve the same set of operative facts.'"  *Id.*

Class certification is appropriate under Rule 23(a)(3) because "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Plaintiffs' claims are typical because they arise from the same alleged practice and course of conduct that gives rise to the claims of other class members, all class members have identical relevant policy language, and at their core the claims are based on the same legal theory of recovery, namely a breach of contract.[7]  As the court in *Gardner* held, "[b]ecause Plaintiffs have shown that class members' claims depend upon a common contention (namely, whether CNA's policy of denying claims . . . constitutes a breach of contract, bad faith, or an unfair trade practice) which is of such a nature that it is capable of classwide resolution, and because each class member's claim rests on similar legal theories and arises from the same course of events, the Court finds that Plaintiffs have demonstrated commonality and typicality."  *Id.* at 73.

_____

[7] The elements of a claim for breach of contract for each of the eleven (11) Class States are substantially similar which provides further support that Plaintiffs' claims are typical of the claims of the Settlement Class and otherwise satisfy Rule 23.  *See* Exhibit C.

Under Rule 23(a)(4), class certification is appropriate if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Plaintiffs have supervised and monitored the progress of this litigation, prepared and sat for their depositions, and actively participated in the prosecution of this action.  Furthermore, Plaintiffs contend that the proposed representatives do not have antagonistic or conflicting interests with the unnamed members of the Classes and they have sufficient interest in the outcome of the case.  As Plaintiffs allege, Plaintiffs and all members of the Classes  are subject to CNA's same interpretation of the Class Policies Long-Term Care Facility Benefit, such that Plaintiffs' interests are aligned with, and are not antagonistic to, the interests of the Classes.

Class II satisfies the requirement of Rule 23(b)(2), which provides that class certification is proper where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  Plaintiffs contend that CNA has acted – and refused to act – on grounds that apply generally to Class II by interpreting the active Class Policies' Long-Term Care Facility Benefit in such a manner that excludes from coverage assisted living facilities located in the eleven Class States. CNA's position is rooted in its interpretation of policy language that is identical to all members of Class II; therefore a beneficial change to this interpretation through the Settlement, applies uniformly to all members of Class II, and will provide expanded coverage for assisted living facilities in the future.

As to Class I, this Settlement also satisfies Rule 23(b)(3) because "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and effectively adjudicating the controversy."  Here, the common core issue in Plaintiffs' allegations is whether

16

CNA's interpretation of the Policies' Long Term Care Facility Benefit properly excludes from coverage assisted living facilities in the Class states.   As the court *Gardner* held, "whatever the individual issues that may need to be determined, the overriding question to which this suit addresses itself is one that is capable of class resolution – whether the policy (which Defendant admits to having) of denying all claims for coverage of [Connecticut assisted-living facilities] demonstrates a breach of contract, unfair trade practice, or bad faith." *Gardner*, 316 F.R.D. at 76. "Because Plaintiffs have demonstrated that questions of law or fact common to class members predominate over any questions affecting only individual members, a finding of predominance is appropriate, even though damages will likely need to be ascertained individually." *Id.*

Finally, superiority is satisfied, according to Plaintiffs, because: (1) the majority of the members of Class I likely incurred minimal damages relative to the significant cost of litigation against a massive insurer with near limitless resources such as CNA, and the prosecution of a case of this magnitude would be complex and time-consuming; (2) granting class certification here would reduce the possibility of other lawsuits alleging the same legal and factual issues; (3) concentrating this litigation in one forum is far more desirable than having separate actions in multiple forums; and (4) even though manageability is not relevant to the assessment of settlement classes, as noted above, there are no management difficulties that would preclude this action from being maintained as a class action.   Indeed, as the court in *Gardner* held, "because class-wide adjudication of Plaintiffs' claims would serve to efficiently resolve 'the claims or liabilities of many individuals in a single action, as well as' eliminate the possibility of 'repetitious litigation and possibly inconsistent adjudications', a class action is the superior method of litigation."   *Id.* at 76-77; *see also Smith v. SIMM Assocs., Inc.*, No. 17-C-769, 2018 WL 389089, at *4 (E.D. Wis. Jan. 12, 2018) ("A class action would be superior to the large

number of individual lawsuits regarding the same legal issues and facts that would otherwise result. Accordingly, the court finds that Plaintiff has satisfied the superiority component of Rule 23(b)(3).").

For the reasons stated above, Plaintiffs and the proposed Classes satisfy the requirements of Rule 23 and therefore the Court should certify the Classes for purposes of the proposed Settlement.

## V.   THE PROPOSED FORM AND METHOD OF CLASS NOTICE AND THE PROOF OF CLAIM AND RELEASE FORM ARE APPROPRIATE

### A.   The Scope of the Notice Program Is Adequate

"[Rule 23(e)(1)] requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise,' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *See Manual* at § 21.312.  To protect the rights of absent class members, the Court must provide the best notice practicable to class members.  *See Phillips v. Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

Notice by mail is practical when the names and addresses of most of the class members are known.  *See Manual* at §30.2111.  Neither Rule 23 nor due process requires receipt of actual notice by all class members; rather, notice should be mailed to the last known addresses of those who can be identified and publication used to notify others.  Newberg, § 8.04; *see also Mangone v. First USA Bank*, 206 F.R.D. 222, 231-232 (S.D. Ill. 2001) (approving mailed notice to last known addresses of a Settlement Class with nearly 18.5 million members).  Here, the identities of the individual Class Members are known by records maintained by CNA.

As described more fully within the accompanying exhibits to the Settlement Agreement (exhibits B, C, and D to the Agreement), the Notice Program will consist of the following: (i)

18

Class I notice (exhibit B to the Agreement) and the claim form (exhibit C to the Agreement) will be sent to all current or former Owners of Policies with an address on file whose policy was active or inactive as of July 1, 2017, but not (a) terminated prior to 2000, (b) policies for which no claim has ever been filed, or (c) policies with claims filed pre-2000; (ii)  Class II notice (exhibit D to the Agreement) will be sent to all Owners of an In-Force Policy; (iii) service of a notice of the Proposed Settlement to the Attorney General of the United States and to the State Insurance Commissioners in accordance with the Class Action Fairness Act, 28 U.S.C. § 1715; (iv) establishment of a national toll free number and post office box by the Settlement Administrator; and (v) establishment of a Settlement Website containing copies of the Class Notices, the Claim Form, the Settlement Agreement, and other information relating to the terms of the Settlement and how Class Members can receive benefits.  Class Counsel respectfully submits that the proposed notice program, as set forth in the Settlement Agreement (Exhibit B at section V), is adequate and should be approved by the Court.

### B.     The Content of the Proposed Notices Comports With the Requirements of Due Process and Rule 23

The content of the notices provide all of the required information concerning Class Members' rights and obligations under the proposed Settlement in a format that is accessible to the reader. The notice sets forth the key terms of the settlement and contains sufficient detail to permit each Class Member to make an informed decision about whether to support, object to, or opt-out of (in the case of Class I) the Settlement as well as how to obtain additional information about the Settlement by including the contact information for the Claims Administrator and Class Counsel. Finally, the proposed format is the same or similar to formats that have been approved by other courts overseeing similar litigation, including long term care insurance claim litigation.  *See Estate of Gardner v. Cont'l Cas. Co.*, No. 3:13-CV-01918-JBA, 2016 WL

10489851, at *2 (D. Conn. Nov. 3, 2016), ("The Court approves the proposed notices, claim form and method of dissemination of notice set forth in Section V of the Stipulation. This Notice Program, including the plan to mail notice to each individual potential Class Member, and establishment of a settlement website and toll free telephone number, meets the requirements of due process and is the best notice practicable under the circumstances."); *see also Pavlov v. Cont'l Cas. Co.*, No. 5:07CV2580, 2009 WL 10689011, at *7 (N.D. Ohio Oct. 7, 2009) ("As previously set forth in this Memorandum Opinion, the elaborate notice program contained in the Settlement Agreement provides for notice through a variety of means, including direct mail to each class member, notice to the United States Attorney General and each State, a toll free number, and a website designed to provide information about the settlement and instructions on submitting claims."). Therefore, Class Counsel respectfully submits that the Court should approve the form of notice as detailed in the Stipulation. *See* Exhibit B at section V, and at exhibits B, C, and D to Exhibit B.

## VI.    PROPOSED SCHEDULE

If the Court grants preliminary approval of the proposed Settlement, the parties respectfully submit the following settlement schedule for the Court's review:

| | |
|---|---|
| Notice Mailed to Class Members. | Within 90 days of the entry of an Order of Preliminary Approval of Settlement |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses. | No later than 45 days prior to the Final Fairness Hearing |
| Deadline for Objections to the Settlement, the proposed Plan of Allocation, and the request for attorneys' fees and expenses. | No later than 30 days prior to the Final Fairness Hearing |
| Deadline for requesting exclusion from the Damages Class Settlement. | No later than 30 days prior to the Final Fairness Hearing |
| Deadline for Lead Plaintiff to file papers in further support of final approval and | No later than 45 days prior to the Final Fairness Hearing |

| | |
|---|---|
| application for fees and expenses. | |
| Settlement Hearing. | To be determined by the Court.The Parties propose that the hearing be set a minimum of 120 days after the entry of the Order of Preliminary Approval of Settlement |
| Deadline for submitting Claim Forms for the damages class. | Within 45 days after the class notice and claim form has been mailed. |

## VII.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter the proposed

Order of Preliminary Approval of Settlement attached hereto as Exhibit A, which will provide:

(i) preliminary approval of the Settlement as fair, adequate and reasonable; (ii) approval of the

form and manner of giving notice of the Settlement to the Class; and (iii) a hearing date and time

to consider final approval of the Settlement and related matters.

DATED:  March 9, 2018

By: */s/ Sean K. Collins*
Sean K. Collins (phv)
LAW OFFICES OF SEAN K. COLLINS
184 High Street, Suite 503
Boston , MA 02110
Telephone: 617-320-8485
Fax: 617-227-2843
sean@neinsurancelaw.com

GLANCY PRONGAY & MURRAY LLP
Lionel Z. Glancy
Ex Kano S. Sams II
Melissa C. Wright
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310-201-9150
Fax: 310-201-9160
lglancy@glancylaw.com
esams@glancylaw.com
mwright@glancylaw.com

GOLDENBERG SCHNEIDER, LPA
Jeffrey S. Goldenberg

One West Fourth Street, 18th Floor
Cincinnati, OH  45202-2012
Telephone: 513-345-8291
Fax: 513-345-8294
jgoldenberg@gs-legal.com

BURKE & PECQUET LLC
Janet E. Pecquet
895 Central Ave, Suite 310
Cincinnati, OH 45202
Telephone: 513-808-4063
Fax: 513-322-4658
janet@b-pelderlaw.com

DEBOFSKY & ASSOCIATES, P.C.
Mark D. Debofsky
200 West Madison Street, Suite 2670
Chicago, IL 60606
Telephone: 312-702-1842
Fax: 312-929-0309
mdebofsky@debofsky.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312-377-1181
Fax: 312-377-1184
pdahlstrom@pomlaw.com

*Counsel for Plaintiffs and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access these documents through the court's CM/ECF System.

/s/ Sean K. Collins_____
SEAN K. COLLINS